IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AYUR TSYBIKOV and IRINA DUDCHENKO,<br><br>                    Plaintiffs,<br><br>         v.<br><br>OLEKSANDR DOVGAL, ALINA KIM, DVL EXPRESS, INC., and ALTEX LOGISTICS, INC.,<br><br>                    Defendants. | Case No. 19 C 3334<br><br>Judge Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

This is a putative class action brought by two delivery drivers against Defendants, DVL Express, Inc. ("DVL"), and Altex Logistics, Inc. ("Altex"). The basis of their claim is that DVL and Altex misclassified them as independent contractors when they were actually employees entitled to the protection of the Illinois Wage Payment and Compensation Act (the "IWPCA"). As a result of this misclassification, they suffered unlawful deductions from their pay and were required to pay business expenses that were properly those of Defendants. They now move for class certification pursuant to Fed. R. Civ. P. 23. under Count I of their Second Amended Complaint. They seek certification of the following class:

> "All delivery drivers who performed deliveries for DVL Express, Inc., and/or Altex Logistics, Inc., between 2011 and the present and were classified as independent contractors."

## I. BACKGROUND

DVL and Altex are owned by Defendants Oleksandr Dovgal and Alina Kim ("Dovgal and Kim") respectively. (Sec. Am. Compl. ¶¶ 8–12, Dkt. No. 99.) The Plaintiffs, Auyur Tsybikov and Irina Dudchenko ("Tsybikov and Dudchenko"), were employed by Defendants as delivery drivers. Tsybikov worked for Defendants between August 2014 and August 2017. (*Id.* ¶ 39.) Dudchenko worked for Defendants in February and March 2020. (*Id.* ¶ 57.) The two companies are closely intertwined; Kim had regular involvement in the operation of DVL, and Altex regularly hauls loads for DVL and vice versa. (Mem. at 2, Dkt. No. 128 (citing testimony).) Kim routinely gave delivery assignments and communicated safety regulations and new policy instructions to delivery drivers, including plaintiffs. (*Id.*) The two companies share dispatchers, recruiters, and safety managers. (*Id.*) They use identical forms for dealing with their delivery drivers. DVL and Altex haul freight for various customers such as Wal-Mart, Whole Foods, Robinson, Glen Star and Coyote. (*Id.*)

Plaintiffs and other delivery drivers were required to pass background checks and drug tests in order to work for Defendants. (Sec. Am. Compl. ¶ 103.) Prior to starting work for Defendants,

Plaintiffs and other delivery drivers were required to attend orientation sessions during which they were instructed about logbook requirements, safety regulations, and truck loading procedures. (Mem. at 6 (citing testimony).) Drivers who violated safety instructions were penalized financially. (*Id.*) Drivers were required to drive a minimum of 3,000 miles per week and were required to work full time and up to 70 hours per week. (*Id.*) The trucks they drove had Defendants' logos on them. (*Id.*) They were not allowed to work for any other trucking company. (*Id.*) Plaintiffs and other drivers received their delivery assignments from Defendants' dispatchers and were required to check in when picking up and dropping off freight loads, as well as periodically while on the road. (*Id.* at 6–7.) Plaintiffs and other drivers were required to submit weekly reports showing the deliveries they made. (*Id.* at 7.) Defendants generated weekly statements listing payments made to the drivers and deductions that were taken from the driver's pay. (*Id.*) Deductions included payments for accidents, safety violations, and escrow payments. (*Id.*) In addition, drivers were required to pay for drug tests, cell phone plans, and GPS systems. (*Id.*) On the basis of these facts, Plaintiffs filed a motion for class certification on September 9,2021. (Dkt. No. 127.)

On September 24, 2021, Defendants responded in opposition to the motion. (Dkt. No. 130.) Defendants contend that Plaintiffs and the other delivery drivers were independent contractors because they each had either written or oral contracts with defendants which stated that they were independent contractors. Defendants also contend that these contracts authorized Defendants to deduct these expenses and amercements from the drivers' pay. Since the deductions from pay is Plaintiffs' main complaint, Defendants argue the claims of the proposed class claims will turn on individual issues. Also, Defendants contend that many of the drivers do not have IWCPA standing because they perform most of their driving duties outside of the state of Illinois. Plaintiffs replied on October 15, 2021, arguing (1) the existence of individual damage claims does not prevent a class action on the issue of liability, (2) that IWPCA applies to all class members, and (3) that differences between the various contracts does not prevent class consideration of a charge of misclassification. The Court now decides the motion.

## II. DISCUSSION

The Court addresses each of Defendants arguments in turn. The initial problem with Defendants' main argument, *i.e.,* that the drivers had individual oral or written contracts, is that it assumes that Defendants did not misclass Plaintiffs. This is not

an issue at class certification; it is the main issue of law in the case. If the Plaintiffs (and class members) have an independent contractor status with Defendants, Plaintiffs will probably lose. However, the issue is an open one prior to trial or summary judgment. As the Seventh Circuit held in *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir.2010), certification is largely independent of the merits.

This claim of misclassification under the IWPCA has been litigated in Illinois and elsewhere, for many different occupations and has been specifically litigated over the status of delivery drivers. *See, e.g., Spates v. Roadrunner Transportation Systems, Inc.*, 2016 WL 7426134 (N.D. Ill, Dec. 23, 2016). The facts in Spates are remarkably similar to the facts in this case. In *Spates*, delivery drivers, as here, were required to execute employment contracts in which the drivers were designated as independent contractor and, therefore, subject to deductions of expenses from their pay. *Id.* at *1. The employer required the drivers to provide their own trucks which bore defendant's DOT identification number and logo. *Id.* Company rules required the drivers to contact the dispatcher to find out which containers to pick up and where they should be delivered. *Id.* They were required to follow defendant's procedures and policies, and they had no control over timing, location, and content of deliveries. *Id.*

Managers supervised their work and required them to purchase GPS equipment, submit to background checks and drug tests, obtain insurance suitable to defendant, and a driver could not refuse a delivery assignment or work for any other trucking firm. *Id.*

As the Seventh Circuit pointed out in *Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998), the distinction between employees and independent contractors in Illinois matters because the IWPCA provides protections to employees that are not available to independent contractors. The purpose of the Wage Act is to protect employees from being "stiffed" by their employers. *Id.* The provision of the Illinois Wage Payment and Collection Act applicable to this case is Section 9, which provides in relevant part:

> "[D]eductions by employers from wages or final compensation are prohibited unless such deductions are (1) required by law; (2) to the benefit of the employee; (3) in response to a valid wage assignment or wage deduction order' (or) (4) made with the express written consent of the employee given freely at the time the deduction is made."

820 ILL. COMP. STAT. 115/9 (2012). Here, Plaintiffs claim as did the plaintiffs in *Spates* that Defendants took deductions in violation of this statute from their and class members pay, which included damage claims, fines for safety violations, escrow payments, expenses for the cost of drug tests, cell phone plans and GPS

systems. These deductions would be contrary to statute if Plaintiffs were employees rather than independent contractors.

Whether Plaintiffs are employees or independent contractors is one of Illinois law, specifically the IWPCA which has established a three-prong test to answer the question. The test is in the conjunctive so that to establish that a driver is an independent contractor rather than an employee, the employer must show the following three conditions are met:

> "the worker is an individual: (1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract ... and in fact; and(2) who performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer ...; and(3) who is in an independently established trade, occupation, profession or business.

*Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016). According to Plaintiffs' evidence, the Defendants fail on all three of the prongs. The evidence submitted shows that Defendants controlled and directed the performance of their drivers' work, the drivers did at least some of their work at Defendants' place of business (picking up loads), and the Defendants' business was trucking which is the trade in which the Plaintiffs were engaged.

The Court next reviews Plaintiffs' standing to obtain the applicability of the IWPCA, which the Defendants deny, and their argument being that the vast majority are not Illinois residents and that the drivers did the majority of their driving outside

Illinois. The current Illinois Department of Labor regulation and the Illinois Court's interpretation of the statute and regulation have held that "both the plain language of the statute and the recently amended administrative regulations of the Illinois Department of Labor place no limitation on the amount of work that an Illinois employee must perform within the state so as avail himself of the Wage Act's protections." *Watts v. ADDO Mgmt., L.L.C.*, 97 N.E.3d 75, 80 (Ill. App. Ct. 2018) (citing 38 Ill. Reg. 18517 (Aug. 22, 2014)). *Watts* forecloses Defendants' standing argument.

### III.  CLASS ISSUES

To obtain class certification, the proposed class must satisfy the requirements of Rule 23(a), Numerosity, Commonality, Typicality, and Adequacy, as well as one of the alternatives in Rule 23(b), in this case, Predominance. *Siegal v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010)

The Numerosity prong is clearly met because Defendants have stated that approximately 721 individuals provided deliveries during the relevant time period. This is sufficient. *See Oplchenski v. Perfums Givenchy, Inc.*, 254 F.R.D. 489, 495 (N.D. Ill. 2008)("Generally, where class members number at least 40, joinder is considered impracticable and numerosity is satisfied.").

Typicality is a relatively simple requirement: A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members and that the claims are based on the same legal theory. *Oshana v. Coca Cola*, 472 F.3d 506, 514 (7th Cir.2006). Each Plaintiff is a driver working for Defendants and is subject to the same contention that he is an independent contractor and not subject to the protection of the IWCPA. Thus, typicality is satisfied.

Commonality requires that the class present common contentions the resolution of which will resolve the case. *Chicago Teachers Union v. Board of Education,* 797 F.3d 426, 434 (7th Cir. 2015). The common issue here is, like the issue in *Spates,* whether the Plaintiffs are employees or independent contractors under the IWPCA. For example, they may do this by showing that the Defendants controlled and directed the way they performed their work. Having done so, they have established commonality.

The final Rule 23(a) requirement is adequacy. This includes both adequacy of the Plaintiffs as representatives of the absent class members and their attorneys as competent representatives. Defendants do not question adequacy, so the Court will not question it either.

The final prong for establishment of a class is the predominance requirement of Rule 23(b). Predominance is similar to

commonality, but more stringent. The question here is whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Butler v. Sears Roebuck & Co.*, 727 F. 3d 796, 801 (7th Cir. 2013)(quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Defendants argue, as did the defendants in *Spates*, that each potential class member will involve different expenses of which at least some will have been authorized. Thus, the case will require each class member to be subjected to a separate trial on this issue. This is not a major problem, however, because the IWPCA requires a written agreement for expenses. Those which have been agreed to in writing will not be compensated. However according to Plaintiffs, many of the expenses were disclosed to them by e-mail while on the road and thus were not in writing and evidence of them no longer exists. In either case, as the court in *Spate* found, this objection will not pose a major problem. The Court therefore finds predominance to exist.

## IV. CONCLUSION

The whole thrust of Defendants' argument against class certification is that each Plaintiff and each class member started work under a separate contract, some written and some oral. Therefore, unlike in *Spates* where the employer used a form contract with each driver, there are a multitude of different contracts, some of which are oral. Thus, each claimant is different so that

there can be no commonality, typicality, or predominance. The fallacy here is that this fact is largely irrelevant because the issue in this class action is whether under the Defendants' trucking business management and operating procedures, a driver could opt out of IWPCA coverage by entering into a contract with Defendants. That is the issue, and it is common to the class. The Court finds that the requirements of Rule 23(a) and (b) are met and the Court declares a class consisting of:

> All delivery drivers who performed deliveries for DVL Express, Inc., and/or Altex Logistics, Inc., between 2011 and the present and were classified as independent contractors.

**IT IS SO ORDERED.**

                                              Harry D. Leinenweber, Judge
                                              United States District Court

Dated: 4/27/2022